[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15633
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00446-AT

NEAL EDWARD COBB,

Plaintiff-Appellant,

versus

CITY OF ROSWELL, GEORGIA,
through Jere Wood, Mayor in his official capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 12, 2013)

Before DUBINA, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Neal Edward Cobb, a retired police lieutenant with the City of Roswell Police Department (the "Department"), proceeding through counsel, appeals the district court's grant of summary judgment in favor of the City of Roswell ("Roswell") on his claims of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), (d), and the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2). Cobb raised nine claims of age-related discrimination and retaliation against Roswell, and the district court granted summary judgment to Roswell on all of Cobb's claims. Cobb appeals the district court's decision as to six of his claims, and, for the reasons explained below, he has abandoned any argument that the district court erred in granting summary judgment as to the remaining three claims.

## I.    BACKGROUND

In December 2008, Cobb was assigned to be the commander of Special Operations ("Special Ops") in the Department. Following this assignment, Cobb maintained the same rank and pay that he previously had; however, his new position was one of greater responsibility, and the Department's Chief, Thamous Edwin Williams, told Cobb that he hoped to elevate him to the position of captain when the next fiscal year began. On September 24, 2009, Cobb was removed from the Special Ops position and reassigned to the position of assistant shift commander of the evening watch. At that time, he was 55 years old.

Chief Williams testified in his deposition that he and Major Michael Brown jointly decided to reassign Cobb out of Special Ops. Williams stated that he was very concerned about the looming problem of car break-ins and he thought that "fresh" ideas and leadership would help address the issue. Major Brown stated that, although the car break-in issue was a problem, it was only a small portion of the reason Cobb was reassigned. Brown expressed dissatisfaction with the way that Special Ops had performed under Cobb's leadership and showed particular concern that Cobb had allowed young, inexperienced officers to conduct undercover drug buys. Brown also stated that he felt the need to give Cobb a copy of the Special Ops protocol and mission statement to guide him with the situation. Lt. Jeff Abbott, who was seven years younger than Cobb, replaced him as head of Special Ops.

On October 2, 2009, Cobb filed an internal grievance complaining that his superiors discriminated against him on the basis of age when they reassigned him. Chief Williams and, later, a Roswell city administrator both determined that Cobb had not suffered an adverse employment action because he did not experience a change in rank or benefits as a result of the reassignment. Cobb appealed these decisions to Roswell's Personnel Committee, which upheld the decisions and found no evidence of discrimination.

On March 19, 2010, Cobb filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and retaliation based on his removal as head of Special Ops and the loss of his plain clothes and unmarked car privileges, attendant to that position. After he filed this EEOC complaint, Cobb noticed that three photographs of him were defaced in the Department. Later that month, he found a picture of a Chihuahua in his office, which was placed over a picture of him. The next month, Cobb noticed that, on a bulletin board in a common area, a picture of a child in a bunny suit covered a picture of him conducting a roll call, making it appear that the child in the suit was conducting the roll call. In June, he noticed that, on the bulletin board, somebody had made pinholes in a newspaper picture of him, making it look as though bullet holes were in his head. Asked in his deposition about the significance of the Chihuahua, Cobb testified that Chihuahuas were "considered to be all bark and no bite." As to the picture of the child in the bunny suit, Cobb testified in his deposition that it was demeaning in that it portrayed him as "being a bunny rabbit, weak, a child."

In the summer of 2010, Roswell implemented an enhanced normal retirement incentive program ("ENRIP"), offering eligible employees a sum of $30,000 to accept early retirement. As part of ENRIP, eligible employees had to sign an agreement that contained a release of all claims against Roswell and a

4

representation and warranty that no claims had been filed.  Employees had until August 16, 2010, to elect to participate in ENRIP.

On July 6, Roswell's Human Resources Director, Diane Whitfield, met with Cobb to provide information about ENRIP, and Cobb's counsel attended the meeting.  Cobb expressed concern that he could not sign the ENRIP agreement because he had a pending EEOC complaint.  After the meeting, Whitfield discussed the matter with a Roswell City Attorney and, later that day, called Cobb to inform him that Roswell would not alter the ENRIP agreement language to accommodate him.

Cobb then filed a second EEOC complaint on July 22, 2010, complaining of the photograph incidents and Roswell's refusal to change the ENRIP agreement language.

Cobb retired on July 28, 2010.  Prior to his retirement, Chief Williams told Cobb that he could keep his gun.  The Department often allowed retiring officers to keep their guns as an acknowledgement of their service to the Department.  On Cobb's last day, however, Major John Watson informed Cobb that Human Resources Director Whitfield instructed him to retrieve Cobb's gun.  Cobb gave his gun to Watson.  Whitfield testified that she had made this request because Roswell recently acquired new guns for its officers, including Cobb, and the cost of those guns was a topic of debate in Roswell's budget process.  Whitfield,

5

therefore, wanted to obtain approval from Roswell's administration before allowing Cobb to keep his gun.

Cobb filed a third EEOC complaint on July 28, 2010, again alleging retaliation and age discrimination based on Roswell's retrieval of Cobb's gun upon his retirement after he previously had been told he could keep it. Roswell's administration later approved giving Cobb's gun to him, and it was returned to him in August 2010.

In Cobb's complaint, Count I alleged discrimination under the ADEA based upon his reassignment from head of Special Ops to assistant shift commander of the evening watch. In Counts II and III, respectively, Cobb claimed discrimination and retaliation under the ADEA based upon his loss of plain clothes and unmarked car privileges following his reassignment. Count IV alleged retaliation under the ADEA because Cobb had filed an EEOC complaint alleging age discrimination against Roswell and was subsequently unable to participate in ENRIP. In Count V, Cobb alleged that Roswell retaliated against him in violation of the ADEA for his previous EEOC filings because, upon Cobb's retirement, Roswell reneged on its agreement that he could keep his weapon, but later returned it, after obtaining approval from the mayor and city council to give it to him as a gift. Counts VI and VII alleged, respectively, that Roswell had created a hostile work environment and constructively discharged Cobb, in violation of the ADEA, based upon pervasive

6

ageist language by younger officers in the Department and because of the incidents involving the pictures. Count VIII restated the previous allegations of retaliation and claimed that the actions violated Georgia's Whistleblower Act. Finally, in Count IX, Cobb alleged retaliation because of a comment that a captain in the Department made about Cobb being assigned a new marked car after he was removed from Special Ops.

## II.    ABANDONED ISSUES

On appeal, Cobb does not discuss Counts II, III, and IX in his initial brief. Cobb only references the issues raised in Counts II and III by arguing that, unlike his situation, Lt. Abbot, his replacement as head of Special Ops and who was eventually reassigned from Special Ops, was allowed to keep his plain clothes and unmarked car privileges. Cobb does not make arguments or cite authorities explicitly as to those issues or relate them to Counts II and III by arguing that the district court erred in granting summary judgment on those claims.

We deem abandoned and will not address the merits of any argument not discussed in an appellant's initial brief. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see also Rogero v. Noone*, 704 F.2d 518, 520 n.1 (11th Cir. 1983) (deeming abandoned arguments not specifically discussed in initial brief). Passing reference to an issue does not suffice to raise it on appeal, and failure to cite authorities and plainly and prominently raise an issue waives it.

*Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012).

Because Cobb does not discuss Count IX at all and makes only passing reference to Counts II and III in his initial brief nor requests that we reverse the district court's grant of summary judgment on those claims, we conclude that he has abandoned any argument that the district court erred in its grant of summary judgment to Roswell on those counts. *See Access Now, Inc.*, 385 F.3d at 1330; *Rogero*, 704 F.2d at 520 n.1.

### III.    DIRECT EVIDENCE

Cobb argues that the district court erred in determining that Cobb had not provided direct evidence for his claims and, as such, erred in applying the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  An employer may not discriminate or retaliate on the basis of age against an employee who is at least 40 years old.  29 U.S.C. §§ 623(a), (d), 631(a).  A plaintiff may prove an age discrimination claim either by showing direct evidence of discrimination or by indirect evidence, in which instance the burden-shifting framework outline in *McDonnell Douglas* applies.  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Standard v.*

8

*A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "Indirect evidence is circumstantial evidence." *Hamilton*, 680 F.3d at 1320. Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age." *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotation marks and alterations omitted). Evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. *Burrell v. Bd. of Tr. of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard,* 161 F.3d at 1330.

Under the *McDonnell Douglas* framework, which applies when only circumstantial evidence of discrimination is presented, a plaintiff would have to show that he was (1) at least 40 years old, (2) subject to an adverse employment action, (3) replaced by a substantially younger person, and (4) qualified for the job from which he was removed. *See Damon*, 196 F.3d at 1359. If the plaintiff establishes a *prima facie* case, then the defendant must "articulate some legitimate, nondiscriminatory reason" for its action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant articulates one or more such reasons, the plaintiff may put forth evidence sufficient for a reasonable factfinder to conclude that the defendant's proffered reasons were false. *See id.* at 804, 93 S. Ct. at 1825.

9

The plaintiff must also show that discrimination was the real reason for the defendant's action. *See Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16, 113 S. Ct. 2472, 2752 (1993).

In asserting that he put forth direct evidence of age discrimination, Cobb relies upon the definition set forth in *Wright v. Southland Corp.*, that "'direct evidence,' in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." 187 F.3d 1287, 1293 (11th Cir. 1999).  Even if we apply the preponderance standard in Wright, Cobb has failed to submit evidence that, more probable than not, establishes a causal link between the adverse employment action and his age. Accordingly, we conclude that the district court correctly applied the burden-shifting framework set out in *McDonnell Douglas*.  *See Damon*, 196 F.3d at 1358-59.

## IV.    COUNT I

The district court concluded that Cobb had made out a *prima facie* case of discrimination as to the allegations in Count I, but determined that Cobb had not shown Roswell's proffered legitimate, non-discriminatory reasons were pretextual. Cobb argues that the district court erred in that finding because (1) Roswell's supposed need for "fresh" leadership was code for age discrimination; (2) the need

10

to address car break-ins was contradicted by crime statistics and Major Brown's testimony that it had nothing to do with Cobb's removal; (3) Major Brown testified that he felt the need to give Cobb a copy of the Special Ops protocol and mission statement, but that was a routine communication and not instigated by Cobb's deficiency; (4) Brown testified that Cobb seemed to have lost interest in the Special Ops role, but Brown gave Cobb a positive performance evaluation on July 1, 2009, just a few months before Cobb's reassignment; and (5) the allegation about Cobb sending inexperienced officers on undercover drug buys was belied by Brown's testimony that no adverse consequences resulted from the undercover drug operations.

We review a district court's grant of summary judgment *de novo*, viewing all facts in the light most favorable to the non-movant. *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999). Under Federal Rule of Civil Procedure 56, a court will grant summary judgment if a movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). An issue or argument not raised in the district court and raised for the first time on appeal will not be considered. *Access Now, Inc.*, 385 F.3d at 1330.

As explained above, without direct evidence to support an age discrimination claim, a plaintiff may demonstrate a *prima facie* case under

11

*McDonnell Douglas* by showing that he was (1) at least 40 years old, (2) subject to an adverse employment action, (3) replaced by a substantially younger person, and (4) qualified for the job from which he was removed. *Damon*, 196 F.3d at 1359. To prove an adverse employment action, the employee must show a serious and material change in the terms, conditions, and privileges of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (Title VII context); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (explaining that we have adapted legal principles applicable in Title VII cases to ADEA claims).

For claims brought under the ADEA, the plaintiff must prove by a preponderance of the evidence that age was the "but for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009) (disparate treatment context). The defendant is entitled to summary judgment if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact as to each of the defendant's articulated reasons. *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*). A plaintiff must meet each proffered reason head on and rebut it, and he cannot succeed by simply disputing the wisdom of the employer's proffered reasons. *Id.* at 1030.

Cobb has not created a genuine issue of material fact as to Roswell's proffered legitimate, nondiscriminatory reasons. *See id.* at 1024-25. As to the "fresh" leadership comment, Williams denied that his use of the word "fresh" meant "young" or "younger," and Cobb has provided no evidence to suggest that Williams's deposition testimony was not true. As to the car break-in issue, both Brown and Williams stated that it was a looming concern in the Department. Williams did not rely on car break-in statistics in his deposition, but rather explained that car break-ins were a problem generally and expressed his belief that new leadership would help to alleviate that problem. Williams's focus on car break-ins (compared to Brown's statement that the break-in issue was only a small portion of the reason for Cobb's reassignment) did not show pretext, because Cobb's reassignment was a joint decision. The fact that the two supervisors who decided to reassign Cobb had distinct concerns does not show that their stated reasons were contradictory. Cobb also has not shown that Brown's testimony that Cobb seemed to have lost interest in Special Ops after July 2009, despite his positive performance review on July 1, 2009, was false. Brown explained in his deposition that (1) he always tried to give positive evaluations to those who worked for him, and (2) he noticed this lack of interest after the period that the 2009 performance evaluation covered. As to the lack of drug arrests, Brown stated in his deposition that he wanted Cobb to focus on narcotics but was dissatisfied

13

with Cobb's method of dealing with narcotics problems. Cobb contends that Brown sent the mission statement and protocol to him as part of a routine email, but Brown testified to the contrary, and Cobb presented no evidence contradicting that testimony except for the timing of the email. Under the circumstances, Cobb has not created a genuine factual issue as to Roswell's proffered legitimate non-discriminatory reasons. *See Gross*, 557 U.S. at 180, 129 S.Ct. at 2352. Accordingly, we conclude that the district court properly granted summary judgment as to Count I.

## V.    COUNT IV

In Count IV, Cobb claims that Roswell retaliated against him by refusing to remove from the ENRIP agreement the warranty that Cobb did not file any past claims against Roswell.

To prove retaliation under the ADEA, a plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected conduct. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). *McDonnell Douglas*'s burden-shifting framework applies to ADEA retaliation claims. *See Hairston*, 9 F.3d at 919.

Cobb engaged in protected activity by filing an EEOC claim, and he suffered an adverse employment action because, when Roswell refused to modify the

14

ENRIP agreement, he was unable to participate in ENRIP.  However, he did not produce direct evidence of a causal connection between his EEOC complaint and Roswell's refusal to modify the agreement.  In any event, even if he had made out a *prima facie* case, Roswell proffered several non-discriminatory reasons, and Cobb has not shown pretext.

As to its non-discriminatory reasons for its decision not to alter the contract, Roswell cited budgetary considerations and a short deadline caused by the timing of ENRIP's rollout and Roswell's fiscal year end.  Cobb argues that the short deadline was a pretextual reason because Roswell's fiscal year ended on June 30, but it did not present the ENRIP offer to him until after the end of that fiscal year, on July 6.  Although Cobb's argument persuasively rebuts Roswell's alleged short deadline, Cobb has not shown that Roswell's alleged budget concerns were pretextual.  Cobb's only argument that the budget was not a concern was the deposition testimony of a Roswell city council member who stated that ENRIP did not come out of the operations budget in a given year.  But he did not testify that budgetary considerations did not factor into the planning and implementation of ENRIP.  Accordingly, Cobb did not rebut all of Roswell's proffered reasons, and, therefore, we conclude that the district court properly granted summary judgment on Count IV.  *See Chapman*, 229 F.3d at 1024-25, 1030.

## VI.    COUNT V

The district court found that Cobb failed to make out a *prima facie* case that Roswell retaliated against Cobb by taking back his gun upon retirement, as alleged in Count V.

Again, to prove retaliation under the ADEA, a plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected conduct. *Weeks*, 291 F.3d at 1311. A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it might well have dissuaded a reasonable employee from making or supporting a discrimination charge. *Burlington North. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68, 126 S.Ct. 2405, 2415 (2006). Employees are not immunized from the "petty slights" or "minor annoyances" that all workers experience. *Id.* at 68, 126 S.Ct. at 2415.

On appeal, Cobb asserts that returning his gun was humiliating and degrading considering his service to the Department. In arguing that his return of the gun was causally connected to his EEOC filings, Cobb points only to the temporal proximity of one of his EEOC filings to Roswell's retrieval of his gun. Cobb also asserts that Roswell's alleged concern about the budget and desire to obtain approval before allowing Cobb to keep his gun was pretext because Human Resources Director Whitfield offered inconsistent testimony on the matter.

Specifically, in her affidavit, Whitfield stated that she told Watson to retrieve Cobb's gun because the guns were a great expense to Roswell, but in her deposition, Whitfield testified to her belief that she could easily resolve Cobb's EEOC complaint regarding his gun by obtaining approval from the mayor and city council to return Cobb's gun to him.

We conclude from the record that Cobb has failed to raise a genuine factual issue as to Count V because he has not shown that Roswell's retrieval (and subsequent return) of his gun was anything more than a petty slight or minor annoyance. *See White*, 548 U.S. at 68, 126 S. Ct. at 2415. Moreover, even assuming he made out a *prima facie* case, he has not shown pretext because the two statements that Cobb relies upon to show that Roswell's alleged budget concerns were pretext are not contradictory. Whitfield testified in her deposition that she asked that Cobb's firearm be retrieved pending administrative approval to let him keep it because it was a newly purchased gun, and the purchase of the new guns had been an issue in Roswell's budget. The fact that Whitfield also believed that returning the gun would resolve one of Cobb's EEOC complaints does not make her concerns about the budget false. Under the circumstances, we conclude that the district court properly granted summary judgment to Roswell on Count V. *See Weeks*, 291 F.3d at 1311; *Chapman*, 229 F.3d at 1024-25.

## VII.   COUNTS VI & VII

In Counts VI and VII, respectively, Cobb alleged that Roswell created a hostile work environment and that he was constructively discharged.  He relies upon the same facts for both claims.  Specifically, he alleges that the three incidents in which pictures of him were defaced and the younger officers' use of allegedly ageist language around the Department produced a hostile work environment and forced him to retire, ending in his constructive discharge.

To prove a hostile work environment claim, the plaintiff must show that (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment either through a theory of direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (Title VII context).

To show a hostile work environment, moreover, the plaintiff must show that the behavior resulted in an environment that a reasonable person would find hostile or abusive and that he, subjectively, perceived to be abusive. *Id.* at 1276.  In looking at the objective severity of harassment, we consider the frequency and severity of the conduct; whether it was physically threatening or humiliating, as

18

opposed to a mere offensive utterance; and whether the conduct unreasonably interfered with the plaintiff's job performance. *Id.*

Constructive discharge occurs when an employer deliberately makes working conditions intolerable, thereby forcing the employee to quit his job. *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). To make a constructive discharge claim, the employee must demonstrate that the work environment and employment conditions were so unbearable that a reasonable person in that employee's position would have been compelled to resign. *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). Establishing a constructive discharge claims is a more difficult "task than establishing a hostile work environment claim." *Bryant*, 575 F.3d at 1298.

As to Count VI, his hostile work environment claim, we conclude that Cobb failed to make out a *prima facie* case because (1) he did not show any connection between the three picture incidents and his age, and (2) he did not complain to any officials at Roswell of the alleged ageist language that younger officers used and, thus, did not show a basis for Roswell's liability. *See Miller*, 277 F.3d at 1278–79. Moreover, Cobb has not met the objective prong of proving a hostile work environment, because the record does not show that the work environment was permeated with discriminatory intimidation, ridicule and insult; rather, Cobb has pointed to a few discrete incidents apparently unrelated to his age. *See id.* at

19

1276-77.  Cobb did not create a genuine issue of material fact as to Count VII, his constructive discharge claim, because (1) he has not made out a *prima facie* case of a hostile work environment, (2) he relies upon the same facts for both claims, and (3) constructive discharge requires a greater showing than hostile work environment.  *See Bryant*, 575 F.3d at 1298.  Accordingly, we conclude that the district court properly granted summary judgment as to Counts VI and VII.

## VIII.  COUNT VIII

In Count VIII, Cobb alleged violations of Georgia's Whistleblower Act, O.C.G.A. § 45-1-4, based upon the same circumstances as his federal retaliation claims.

Under Georgia's Whistleblower Act, a public employer may not "retaliate against a public employee for disclosing a violation or noncompliance with a law, rule or regulation to either a supervisor or a government agency."  O.C.G.A. § 45-1-4(d)(2).  The Georgia Court of Appeals has applied the *McDonnell Douglas* burden-shifting framework to claims brought under Georgia's Whistleblower Act. *Forrester v. Ga. Dep't of Human Servs.*, 308 Ga. App. 716, 721–22, 708 S.E.2d 660, 665-66 (Ga. Ct. App. 2011) (physical precedent only).

Because Cobb relies upon the same facts and circumstances to prove his state law retaliation claim as he does his federal retaliation claims, and because he did not create a genuine factual issue as to any of his federal retaliation claims, we

conclude that Cobb's state retaliation claim cannot survive summary judgment under *McDonnell Douglas*'s burden-shifting framework.  S*ee id.*

For all of the above reasons, we affirm the district court's grant of summary judgment.[1]

**AFFIRMED.**

---

[1]  Roswell filed a motion to strike portions of Cobb's initial brief and reply brief because Cobb relied upon affidavits that the district court did not admit into evidence.  Cobb filed a motion requesting a finding that Roswell's motion is frivolous.  Because we affirm the district court's grant of summary judgment and the disputed evidence does not change the result, we DENY as moot both motions.