[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15693
_____

D.C. Docket No. 3:13-cv-00915-MMH-MCR


SHEA REBECCA BROWN,

                                             Plaintiff - Appellant,

versus

RUDOLPH DAVIS, SR.,
Individually,
CARLTON TUNSIL,
Individually,
CITY OF LAKE CITY,
Florida,

                                             Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 11, 2017)

Before TJOFLAT, HULL, and O'MALLEY,[*] Circuit Judges.

HULL, Circuit Judge:

Plaintiff Shea Brown appeals the district court's grant of summary judgment in favor of defendants Rudolph Davis, Carlton Tunsil, and the city of Lake City, Florida. Brown brought suit against the defendants under 42 U.S.C. §§ 1981 and 1983, alleging that she was unlawfully terminated from her employment on the basis of her race and gender.

After review, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

### A.    The Parties

Plaintiff Brown is a Caucasian female who, from March 2008 to August 2009, worked as a law enforcement officer for the Lake City, Florida Police Department ("LCPD"). Defendant Tunsil is an African-American male who, from June 2009 to September 2009, served as the Interim Chief of the LCPD. Defendant Davis is an African-American male who, from 1990 to November 2009, worked as a law enforcement officer for the LCPD. During Tunsil's term as Interim Chief, Davis served as the second-in-charge for the LCPD.

---

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

## B.    LCPD Work Environment

During the course of plaintiff Brown's employment, Brown alleged that she heard comments among her peers about Davis not liking women. For example, in 2008, when the LCPD hired Brown, defendant Davis purportedly disapproved of Brown's hiring and expressed his preference that the LCPD hire his friend Greg Williams, an African-American male, instead. Davis allegedly objected to the hiring of another white female law enforcement officer on the same day. John Blanchard, an LCPD sergeant who served during Brown's employment, testified that he heard Davis "say some things about females" that led him to believe that Davis had "issues with women that had authority." According to Blanchard, Davis "felt basically [that] women were not appropriate in law enforcement" and would, from time to time, make statements to that effect.

## C.    Evidence Destruction

On April 23, 2009, LCPD officer Jason Golub asked plaintiff Brown to meet him to transport an arrestee—King David Bradley— to jail on a violation of probation charge. At that time, Golub was ending his shift, and Brown was beginning her shift. Golub and Brown met at the police station to transport Bradley. At the station, Golub gave Brown separate bags containing pills and marijuana that he had found on Bradley during the course of Bradley's arrest. Golub had weighed the marijuana at the police station and determined that it only

3

constituted a misdemeanor amount. When Golub handed the marijuana to Brown, Golub allegedly told Brown, "[d]o what you want with this."

According to plaintiff Brown, the LCPD maintained an unwritten policy that allowed LCPD officers to use their discretion about whether to charge someone for possession of a misdemeanor amount of marijuana. If the officer decided not to charge the suspect, the officer could destroy it in the presence of another officer. Brown testified that she had seen seven other LCPD officers exercise this policy in practice. Defendants Davis and Tunsil deny that such a policy ever existed.

After receiving the marijuana and the pills from Golub, Brown transported Bradley to the jail without incident. Brown threw away the pills, which she determined to be water pills, but retained possession of the marijuana.

After leaving the jail, but while still in possession of the marijuana, plaintiff Brown had dinner with fellow LCPD officer Ivan Useche. Brown and Useche drove their separate patrol cars to an undeveloped subdivision to eat dinner. Before eating her dinner, and with Useche watching, Brown took out the marijuana and destroyed it by rubbing it into the ground with her boot. Brown did not inform Useche about the source of the marijuana or that she was destroying it pursuant to the unwritten policy. Following this incident, Brown never filed a report or affidavit with the LCPD regarding her handling of Bradley or her destruction of the

4

marijuana. Brown heard nothing concerning her destruction of the marijuana for several weeks.

## D.    Brown's First Domestic Dispute

On May 5, 2009, plaintiff Brown called LCPD corporal Paul Kash about a family dispute that was occurring with her husband. As Brown was trying to leave her residence, her husband refused to give her the keys to her automobile. Brown called Kash to help her get the keys because she worried that the situation was going to escalate and that she would become the victim of domestic violence. Kash came to Brown's home and helped Brown obtain her keys and leave the home without violence.

Following the incident, Kash wrote an internal report regarding the events. Plaintiff Brown supported Kash writing the report. Following Kash's report, defendant Davis learned of the incident and called Brown into his office. Davis asked Brown to write a statement against her husband to be handed over to the Columbia County Sheriff's Office, where her husband was employed. Brown refused to write a statement against her husband because she did not know Davis's intent, which led to an argument. Davis threated to write Brown up for insubordination. Following this meeting, Davis wrote up Brown for insubordination, but nothing came of Davis's complaint.

5

**E.    Investigations Into Brown's Conduct and Brown's Arrest**

On May 12, 2009, an Assistant State Attorney for the State of Florida contacted the LCPD concerning a missing "affidavit or offense report" on Bradley. This prompted a conversation between the Florida State Attorney's Office and the LCPD, which revealed that Brown had not filed an arrest affidavit on Bradley for the marijuana charge. Eventually, Skip Robert Jarvis, State Attorney for the Third Judicial Circuit, learned of this fact and requested that the Florida Department of Law Enforcement ("FDLE") conduct a criminal investigation into Brown concerning possible improper destruction of evidence. On May 14, 2009, Gary Laxton, then LCPD's Chief, informed Brown that she was under investigation by the FDLE for tampering with evidence in relation to her handling of the marijuana. Brown later testified that nobody from the LCPD, including defendants Davis or Tunsil, was involved in either Jarvis's request or in the ensuing FDLE investigation.

The FDLE eventually cleared Brown of "any wrongdoing" and informed State Attorney Jarvis that it "didn't have anything to proceed with." Notwithstanding the FDLE's recommendation, Jarvis conducted an additional investigation of Brown on his own. Again, this investigation was conducted without any LCPD involvement. On July 7, 2009, State Attorney Jarvis filed an

information charging Brown with tampering with evidence, a third-degree felony.[1] The State Attorney's Office issued a "capias" for Brown's arrest, and Brown voluntarily turned herself into the Columbia County, Florida jail. Following Brown's arrest, LCPD officers posted bond for Brown's immediate release.

On July 8, 2009, defendant Tunsil, as acting LCPD Interim Chief, placed Brown on administrative leave without pay. Tunsil asked defendant Davis to keep the LCPD updated on the criminal investigation of Brown. Davis would monitor investigative reports generated by the State Attorney's Office on Brown and then pass the developments on to Tunsil.

At some point thereafter (not specified by the parties), defendant Tunsil met with Wendell Johnson, City Manager for Lake City, and Carrie Correia, Human Resources Director for Lake City, at Lake City's City Hall to discuss Brown's situation. Defendant Davis was also present at this meeting. According to Tunsil, Johnson and Correia stated at the meeting that, if Brown had been arrested, Tunsil would be required to "get rid of her." Johnson and Correia clarified that Tunsil would be required to do so merely if Brown were arrested, as opposed to being convicted on a later charge. Davis separately testified that, over the course of his LCPD career, he had never seen an LCPD officer remain employed by the LCPD

---

[1]A jury trial was held on the state's third degree charge against Brown, which resulted in a mistrial. Later, the State Attorney's Office failed to meet a retrial deadline, and the retrial was ultimately barred by the Speedy Trial Act.

7

following a felony arrest. Davis testified that the LCPD terminated at least one particular male officer (whose race is not specified) under this policy for that officer's arrest resulting from off-duty conduct.

### F.    Internal Affairs Investigations Into Brown

On July 10, 2009, defendant Tunsil ordered Blanchard to conduct the LCPD's own Internal Affairs ("IA") investigation, IA09-07, into the destruction-of-marijuana incident and Brown's resulting arrest and criminal prosecution. After the investigation, Blanchard recommended to defendant Tunsil that violations of "On/Off Duty Conduct," "Neglect of Duty," "Felonies," and "Recovered Property/Evidentiary Material" be sustained against Brown. Blanchard recommended that a violation of "Untruthfulness" not be sustained against Brown for the destruction-of-marijuana incident because her account of being told to do what she wanted with the marijuana was "backed up by [another officer's] statement."

Defendant Davis asked Blanchard to conduct additional IA investigations into Brown's conduct. On one occasion, Davis ordered Blanchard to conduct an IA investigation about Brown's allegedly causing property damage to her work computer. A few of the keys from the keyboard were missing, and Davis stated that he believed Brown had damaged the computer intentionally. Brown testified that the damage resulted from an issue with the computer stand that the LCPD

8

provided. Brown testified that she returned the two keys—which had "popped off"—back with the computer.

On July 22, 2009, defendant Davis directed Blanchard to complete another IA investigation on Brown, this time regarding certain speeding tickets that Brown had issued earlier that year. According to Blanchard, during the course of the IA investigation, defendant Davis allegedly threatened to initiate an IA investigation against Brown's supervisor because the supervisor "wasn't giving [Davis] the statement he wanted" about Brown's pending investigation. Blanchard testified that Davis's threat "shocked" him.

## G.    Brown's Second Domestic Dispute and Termination

On August 14, 2009, another domestic dispute occurred between Brown and her husband. Davis ordered LCPD officer Larry Shallar, who responded to the incident, to complete an arrest affidavit. Davis threatened to initiate an IA investigation against Shallar if he did not complete the affidavit. Shallar completed the arrest affidavit, but Brown was not arrested.

On August 25, 2009, defendant Davis recommended to Tunsil that the LCPD terminate Brown's employment. Tunsil gave Brown notice of the termination recommendation and offered Brown the opportunity for a hearing. A hearing was held on August 28, 2009.

On August 31, 2009, defendant Tunsil signed a letter on behalf of the LCPD terminating Brown. In support of Brown's termination, the LCPD offered five reasons:

> 1) You had several complaints (4) filed against you in a short time span.
> 2) You had several serious policy violations which were sustained.
> 3) Your arrest and actions brought discredit to you and this agency.
> 4) You had two domestic disturbances at your residence within 4 months.
> 5) Your behavior creates a liability for the City of Lake City.

The termination letter explained that any of the five listed reasons, "individually or in any combination, constitutes just cause for your termination."

On August 31, 2009, the same day that the LCPD terminated Brown's employment, it hired Greg Williams, the African-American male for whom defendant Davis had previously expressed a preference. Williams had previously worked for the LCPD from 1995 to 2007 before leaving for the Lake City Sheriff's Office. Before Brown's termination and Williams's hiring, Williams had re-applied to the LCPD, completed the interview process, and been recommended to City Manager Johnson for re-employment.

Following Brown's termination, her criminal case proceeded to trial.[2] In December 2009, a mistrial was declared due to a speedy trial violation. Although

---

[2]On November 16, 2009, the LCPD administratively terminated Davis due to his alleged differences of opinion with a new acting LCPD Chief. Davis sued the LCPD in the United States

State Attorney Jarvis's office voiced its intention to re-try Brown, the state court ultimately dismissed all charges against Brown.

## H.    Davis's 2013 Letter to Brown

On February 10, 2013, approximately three and a half years after Brown's termination from the LCPD, defendant Davis wrote Brown a letter. In the letter, Davis wrote that he would "swear to" the following facts: "I was directed by City Manager Wendell Johnson to fire Officer Brown, after enough evidence was gathered to justify firing her, and because of this I wrote her up for any incident, where she was involved." Davis wrote that "[t]he State Attorney, Robert Skip Jarvis, [sic] filing of criminal charges against Officer Brown appeared to be vindictive because there appeared to be no evidence of wrongdoing by Officer Brown, but just a miscommunication between Officer Brown and Officer Jason Golub." Davis stated that, "[a]s the former captain at the [LCPD], I believe Officer Brown was treated unfairly, and not equal, compared to what other officers have done at the [LCPD]."

In an April 6, 2015 deposition, defendant Davis later testified that he wrote the February 10, 2013 letter because he was "trying to help [Brown] get

District Court for the Middle District of Florida on a retaliation theory, pursuant to Title VII, 42 U.S.C. § 2000e. See Davis v. City of Lake City, 553 F. App'x 881, 882 (11th Cir. 2014) (unpublished). The United States District Court for the Middle District of Florida granted summary judgment in favor of the LCPD. Id. at 885. This Court affirmed the judgment on appeal. Id. at 888.

11

employment." Davis stated that the letter "could have been worded differently and it's not totally correct [as] to what really happened." Brown's counsel asked Davis how he would reword the letter. Davis replied that he would "take out the word that [Johnson] directed [him] to do something because . . . [Johnson] didn't direct [him] to do it." Davis also testified that any investigations that Brown had been placed under were "justified, according to policy." As to the statements about Jarvis's investigation, Davis testified: "The statement that I made about [Jarvis] is an incorrect statement because at that time . . . I had no information about what he was doing because FDLE was investigating." As to the statement about Brown's unequal treatment, Davis testified: "I take issue with [that] because for me to say that she was treated unfairly would mean that I treated her unfairly . . . . She was treated just like any other officer under the same circumstances would have been treated . . . . It was just a statement that was made at the time, like I say, and basically trying to make it not look as bad as it actually was." Davis concluded his testimony concerning the February 10, 2013 letter by stating that "the whole letter is improperly worded and not correct."

## I.    Procedural History and District Court Findings

On May 14, 2014, plaintiff Brown filed an amended complaint—the operative complaint for this appeal—against defendants Tunsil, Davis, and the city of Lake City, Florida. The defendants moved for summary judgment.

12

On November 24, 2015, the district court granted the defendants' motions for summary judgment. In reviewing Brown's claims, the district court assumed, without deciding, that Brown had presented a prima facie case of discrimination based on her race and gender. The district court then reviewed the defendants' five proffered reasons for Brown's termination, as listed in the August 31, 2009 termination letter, to determine whether they were pretext for discriminatory conduct. The district court determined that Brown presented evidence "creating a genuine issue of material fact as to the question of pretext with regard to the Internal Affairs investigations, the sustained policy violations, . . . the domestic violence incidents," and her "behavior creat[ing] a liability for the City" as reasons for her termination.

However, the district court determined that Brown failed to present evidence that one of the listed reasons—that Brown's "arrest and actions" brought "discredit to [her], and th[e] agency"—constituted pretext. Because Brown thus failed to rebut each purportedly legitimate reason for her termination, the district court granted summary judgment in favor of the defendants. See Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000); see also Cobb v. City of Roswell, 533 F. App'x 888, 895-96 (11th Cir. 2013) (unpublished).

On December 17, 2015, Brown filed a motion for reconsideration of the district court's summary judgment order. On December 23, 2015, Brown filed a

timely notice of appeal. On April 29, 2016, the district court denied Brown's

motion for reconsideration of the summary judgment order.

## II.  APPLICABLE LAW

### A.    Standard of Review

"This court reviews de novo summary judgment rulings and draws all

inferences and reviews all evidence in the light most favorable to the non-moving

party." Craig v. Floyd Cty., 643 F.3d 1306, 1309 (11th Cir. 2011); see also

Edwards v. Shanley, 666 F.3d 1289, 1292 (11th Cir. 2012); Am. Bankers Ins. Grp.

v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005).

### B.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Davila v. Gladden, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting

Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show . . . that

there are no genuine issues of material fact that should be decided at trial." Clark v.

Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden

has been met does the burden shift to the non-moving party to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." Id.

"When a moving party has discharged its burden, the non-moving party must then

go beyond the pleadings, and by its own affidavits, or by depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citation omitted) (internal quotation marks omitted).

"When reviewing a grant of summary judgment, [this Court] may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993).

## C.    Discrimination Standards

This Court recognizes "an equal protection right to be free from employment discrimination [including] . . . various race- and gender-based employment decisions by public officials, including those concerning discipline, promotions, transfers, reclassifications, and termination." Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1268 (11th Cir. 2003). Where, as here, the plaintiff bases an employment discrimination claim on circumstantial evidence, this Court applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792,  804-06, 93 S. Ct. 1817, 1825-26 (1973).

Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination by alleging that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more

favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange Cty., 447 F.3d 1319, 1323 (11th Cir. 2006); see also EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). When the defendant "fails to persuade the district court to dismiss the action for lack of a prima facie case and responds to the plaintiff's proof by offering evidence of a non-discriminatory reason for its actions," this step of the analysis "drops from the case." Joe's Stone Crabs, 296 F.3d at 1273 (citation omitted).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence showing a legitimate, non-discriminatory reason for the adverse employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981). If the employer produces such evidence, the burden shifts back to the plaintiff to "demonstrate[] 'such weaknesses [or] implausibilies . . . in the employer's proffered legitimate reason[] for [the] action that a reasonable factfinder could find them unworthy of credence.'" Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)); see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998). A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

16

that the employer's explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S. Ct. at 1095.

**D.    Qualified Immunity in the Employment Discrimination Context**

Where the defendant employer is also a state official acting under color of state law, the plaintiff must also overcome the defendant employer's qualified immunity defense, where raised.  See Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) ("Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it."). To overcome qualified immunity, the plaintiff must show that: (1) the defendant violated a constitutional right, and; (2) this right was clearly established at the time of the alleged violation. See Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014); see also Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697 (1999). A court may begin the qualified immunity analysis with either prong, at its discretion. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

In the employment discrimination context, the "clearly established" requirement provides that a state official "can be motivated, in part, by a dislike or hostility toward a certain protected class to which a citizen belongs and still act lawfully" where "the record shows they would have acted as they, in fact, did act even if they had lacked discriminatory intent." Rioux v. City of Atlanta, 520 F.3d

17

1269, 1283 (11th Cir. 2008) (quoting <u>Foy v. Holston</u>, 94 F.3d 1528, 1534 (11th Cir. 1996)). "Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive, the defendant is entitled to immunity." <u>Foy</u>, 94 F.3d at 1535. "Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful <u>and</u> unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." <u>Id.</u>

## III.  DISCUSSION

On appeal, plaintiff Brown argues that the district court erred in finding that Brown's arrest was a non-pretextual reason for her LCPD termination. First, Brown asserts that the district court failed to credit Davis's February 10, 2013 letter, in which Davis stated that the filing of charges against her was vindictive. Second, Brown highlights that her arrest arose from the same incident—Brown's destruction of the marijuana—that led the LCPD to conduct an IA investigation into Brown's conduct. Because the district court found this IA investigation to be a pretext for Brown's termination, Brown asks this Court to infer that the "closely intertwined" arrest, resulting from the same factual incident, is sufficiently "suspicious" to create a disputed issue of material fact.

18

On the first point, the district court did not err in finding Davis's letter and statements insufficient to raise a material dispute on the issue of pretext. Even assuming arguendo[3] that Davis was the final decisionmaker with respect to Brown's employment, Brown's attempt to draw parallels to this court's decisions in Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310 (11th Cir. 2012), and Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004), is still unpersuasive. Those cases both involved statements and admissions from final decisionmakers that actually contradicted the proffered reason for employment action. In Kragor, the proffered reason for termination was that the employee had "violated . . . the company's conduct policies," and yet there was evidence that the final decisionmaker stated "she had done nothing wrong." Kragor, 702 F.3d at 1310. In Wilson, the plaintiff was not promoted allegedly because another employee was "more qualified," and yet the final decisionmaker stated that the plaintiff was "the obvious choice" and the "most qualified." Wilson, 376 F.3d at 1079.

Here, Davis's letter does nothing to contradict the fact of Brown's arrest, which was itself the reason given for termination. Whether or not Brown's arrest was legitimate, fair, or justified is not relevant insofar as she has failed to rebut the

---

[3]Although Davis noted that he and Tunsil would "confer" with Johnson on the termination of LCPD officers, Davis testified that Johnson had final authority with regard to all terminations of LCPD employees.

defendants' evidence that no other officers have been permitted to continue their employ after being arrested. She does not challenge that fact on appeal, and did not below: "Indeed, Brown failed to identify <u>any</u> officer in the history of LCPD that was arrested and not terminated . . . ."[4] The district court correctly recognized that simply being arrested (particularly for a felony), without looking into the actual merits of that arrest, was a plausible policy for termination of a police officer—i.e., to avoid bringing "discredit" to the police agency (and any future actions by that officer) in the eyes of the public. See <u>McMullen v. Carson</u>, 568 F. Supp. 937, 944 (M.D. Fla. 1983), <u>aff'd</u>, 754 F.2d 936 (11th Cir. 1985) (recognizing that police departments have an important governmental interest in maintaining public confidence in the police force and public respect for its officers). Brown "does not dispute" that none of the current defendants "had anything to do with the State Attorney's Office's decision to criminally investigate, charge, and arrest her." Hence, to "quarrel[] with the wisdom of that reason" for termination, and analyze whether or not the decision to terminate an officer after such an arrest is prudent or justified, would be overstepping the bounds of judicial review. <u>Joseph v. Columbus Bank & Trust Co.</u>, 447 F. App'x 110, 112 (11th Cir. 2011) (unpublished).

---

[4]Defendant Davis provided unrebutted testimony that, over the course of his twenty year LCPD career, no other LCPD officer who was arrested for a felony remained employed by the LCPD following such an arrest.

20

On the second point, Brown cites to <u>Woodard v. Fanboy, LLC</u>, 298 F.3d 1261, 1267 (11th Cir. 2002), and <u>Holland v. Gee</u>, 677 F.3d 1047 (11th Cir. 2012), in support of her argument. In <u>Woodard</u>, Brown observes, there were two proffered non-discriminatory reasons for eviction: (1) that the inside of the plaintiff's apartment was dirty; and (2) that the plaintiff had allowed trash to accumulate outside of the apartment. The plaintiff rebutted the first justification directly with testimony that the inside of the apartment was always clean, but did not contest that trash had accumulated outside the apartment; instead, the combination of the defendant's untruthfulness regarding the inside of the apartment and testimony suggesting that other sources might be causing the trash outside allowed for the plaintiff to survive summary judgment. <u>Woodard</u>, 298 F.3d at 1267. Likewise, in <u>Holland</u>, there were two proffered non-discriminatory reasons for termination: (1) that the plaintiff suffered from poor work performance; and (2) that she used her father's relationship with the employer to "get away" with her failure to adequately perform her duties. The plaintiff rebutted the first justification directly with testimony that her work performance was not deficient, and as a result the court found the second justification "fishy and suspicious as well." <u>Holland</u>, 677 F.3d at 1060.

Neither <u>Woodard</u> nor <u>Holland</u> is analogous to the case at hand. In <u>Woodard</u>, both of the proffered reasons involved the cleanliness and sanitation of the

21

plaintiff's apartment—the fact that the plaintiff kept the inside of their apartment clean logically cast suspicion on whether she was the source of any external mess. Likewise, in <u>Holland</u>, both of the proffered reasons involved the plaintiff's work quality—the fact that the plaintiff did not exhibit poor work performance logically cast suspicion on whether she had used her family connection to "get away" with that performance. Here, Brown's arrest was itself the reason proffered for termination—not the conduct underlying that arrest.

Put differently, Brown has offered no evidence (or even allegation) that she would not have been terminated if she had been arrested for any other reason than the destruction of evidence.[5] She cannot, therefore, argue that the arrest reason is closely linked to the other proffered reasons for purposes of <u>McDonnell Douglas</u>; even if all other proffered reasons were pretextual, that would not logically undercut the fact that Brown was terminated for having been arrested. Brown's suspicion alone—with no logical nexus—is not enough to rebut a proffered non-discriminatory reason. Applying <u>Woodard</u> and <u>Holland</u> to the facts of this case would have the practical effect of undermining the requirement that plaintiffs must rebut <u>each</u> non-discriminatory reason proffered by the defendant in order to withstand summary judgment—a requirement acknowledged and recognized by

---

[5]In fact, it is undisputed that City Manager Johnson and Human Resources Director Correia told Tunsil—in a meeting in which Davis was also present—that the LCPD would be required to terminate Brown's employment if she was arrested. Thus, the defendants received instruction that they had to terminate Brown if a facially neutral event occurred.

the district court and all parties to this case. In any given case, the list of reasons

for employment action will have some similar and overlapping factual bases—but

two reasons must actually share the same logical predicate for Woodard and

Holland to be operative.[6]

## IV.  CONCLUSION

For all of these reasons, we affirm the district court's grant of summary

judgment in favor of the defendants.

**AFFIRMED.**

---

[6]Because plaintiff Brown fails to carry her burden under McDonnell Douglas, we need not and do not decide the merits of her prima facie discrimination case and defendants' qualified immunity defense. Cf. Joe's Stone Crabs, 296 F.3d  at 1273; see also Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994) (assuming, without deciding, the plaintiff's establishment of her prima facie case where not necessary to resolve the appeal). We also need not decide alternative bases for summary judgment offered by defendants, such as defendant Davis's assertion that he lacked the power to effect Brown's termination.