[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-12507

_____

D. C. Docket No. 98-02575 CV-AR-S


SHEREE WOODARD,

Plaintiff-Appellant,

versus

FANBOY, L.L.C.,
an Alabama corporation,
THEODORE DAVIS,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 26, 2002)**


Before EDMONDSON, Chief Judge, DUBINA and COX, Circuit Judges.

EDMONDSON, Chief Judge:

This appeal is mainly about familial-status discrimination under the Fair Housing Act. We must determine whether the district court erred in granting the defendants judgment as a matter of law on one of the plaintiff's claims and in ordering a new trial. We reverse the district court's grant of judgment as a matter of law and vacate the order of a new trial.

BACKGROUND[1]

Sheree Woodard ("Plaintiff") rented an apartment. Plaintiff lived in the apartment with two of her children, Tashunda, a 10-year old girl, and Demarius, an 8-year old boy.[2]

Several months into her one-year lease of the apartment, some of the units (including Plaintiff's) at the pertinent property were purchased by Fanboy, L.L.C., a corporation owned in part and managed by Theodore Davis (collectively

---

[1]Because the district court based its grant of a new trial to Defendants, following a jury verdict in favor of Plaintiff, on the court's conclusion that one of Plaintiff's claims was unsupported by sufficient evidence, we consider all evidence (and the inferences drawn therefrom) in the light most favorable to Plaintiff. See Richards v. Michelin Tire Corp., 21 F.3d 1048, 1052 (11th Cir. 1994). We stress that this is a case that has been fully tried and in which a jury verdict has been reached.

[2]Plaintiff testified that the children were ages 12 and 10 at the time of trial.

"Defendants").[3] Defendant Fanboy assumed Plaintiff's lease, and Defendant Davis began managing Plaintiff's apartment. Problems ensued. Defendants evicted Plaintiff. And a federal lawsuit resulted.

At trial, Plaintiff presented evidence that she was ultimately evicted from her apartment, at least in part, because she would not have sex with Defendant Davis. Defendant Davis made various sexually suggestive remarks to Plaintiff. Plaintiff did not respond favorably to the remarks. After Plaintiff rejected his advances, Defendant Davis evicted Plaintiff from her apartment. When Plaintiff asked why she was being evicted, Defendant Davis responded "because we could not get together."

Plaintiff also claims that the evidence she presented at trial shows that Defendant Davis evicted her, in part, because she had children. Defendant Davis cursed at Plaintiff's children on several occasions and blamed them for the trash and vandalism around Plaintiff's apartment. Davis, on several occasions, tried to order Plaintiff's children to clean up the trash. Davis also directed Plaintiff's children not to play in the front yard of the apartment: he directed the children to play in the alley behind the apartment. And, at the trial, Defendant Davis testified

---

[3]Defendants, together, owned and managed roughly 13 housing units in the complex in which Plaintiff's apartment was located and roughly 30 units throughout the city.

3

that "the big reason" he terminated Plaintiff's lease was because of "all the kids running around there throwing paper, balls, trash, things like cleanup."

Plaintiff originally sued Defendants, asserting state and federal law claims. But, the only claims submitted to the jury and at issue in this appeal are Plaintiff's housing discrimination claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b). Plaintiff's specific FHA claims are that she was the victim of gender discrimination and of familial-status discrimination.

The jury found for Plaintiff. At the end of the trial, the jury responded affirmatively to this special interrogatory submitted to it for each Defendant:

> Did Plaintiff prove by a preponderance of the evidence that a motivating factor in the decision by [Defendants] to terminate her lease was her sex and/or her family status?

No party objected to this interrogatory, which was crafted by the district court. After finding Defendants liable, the jury awarded Plaintiff $8,000 in damages.

After the verdict was returned, Defendants filed a Rule 50(b) motion seeking judgment as a matter of law on both claims. The district court granted the motion on Plaintiff's familial-status discrimination claim, ruling that insufficient evidence supported that claim. The district court denied the motion on Plaintiff's sex discrimination claim. And the district court reasoned that, on account of the

4

"and/or" language in the jury interrogatory, the jury's verdict, in effect, was a general verdict. Because -- in the district court's view -- one of the two claims on which the general verdict was based was not supported by the evidence, the district court ordered a new trial on Plaintiff's sex discrimination claim only. See generally, Richards, 21 F.3d at 1055 ("Where . . . two or more claims are submitted to the jury in a single interrogatory, a new trial may be required if either of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim.").

DISCUSSION

Plaintiff attacks the procedure the district court followed when granting Defendants a new trial. And, she argues that, contrary to the district court's conclusion, sufficient evidence does support her familial-status discrimination claim. Because we conclude that sufficient evidence does support Plaintiff's familial-status discrimination claim and we reverse the district court's order on that basis, we do not address Plaintiff's other arguments.

We are faced with the familiar task of reviewing the record to determine if sufficient evidence was introduced to support a verdict in Plaintiff's favor on her

discrimination claim.  We will reverse the district court's conclusion that Plaintiff's familial-status discrimination claim was unsupported by sufficient evidence if "Plaintiff presented substantial evidence such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions" on the merits of the claim.  Priester v. City of Riviera Beach, 208 F.3d 919, 923 n.2 (11th Cir. 2000).

To prove familial-status discrimination, Plaintiff must show that Defendants discriminated against her "in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of familial status . . . ."  42 U.S.C. § 3604(b).[4]  Familial status is defined, in short, as one or more children (under 18 years of age) living with a parent or legal guardian.  42 U.S.C. § 3602(k)(1).  Section 3604(b) thus operates to prohibit landlords from refusing to rent to (or from evicting) a person because that person has children living with them.  On appeal, Plaintiff argues that she proved her familial-status discrimination claim using both direct and circumstantial evidence.  We conclude that sufficient circumstantial evidence supported Plaintiff's familial-status claim.  So, we do not address Plaintiff's direct evidence

_____

[4]On appeal, Plaintiff also attempts to rely on the "in the provision of services or facilities" language of Section 3604(b).  Because we conclude that Plaintiff presented sufficient evidence of a violation of the "terms, conditions, or privileges" language of Section 3604(b), we do not address Plaintiff's arguments based upon "in the provision of services or facilities" language of Section 3604(b).  Nor do we need to decide whether Plaintiff waived reliance on the "provision" language.

arguments. For the purposes of this appeal, Defendants concede that Plaintiff established, by a preponderance of the evidence, a prima facie case of discrimination in the termination of Plaintiff's lease.

At the trial, Defendants advanced legitimate non-discriminatory reasons for their acts.[5] Davis asserts that he terminated Plaintiff's lease specifically because of the apartment's condition: (1) the interior of her apartment was unclean and (2) Davis believed that Plaintiff and her children were responsible for the trash outside her apartment. These reasons are legitimate non-discriminatory reasons for the eviction. So, Plaintiff needed to produce evidence sufficient to prove by a preponderance that Davis was actually motived by discriminatory animus on the basis of familial status.

A showing that a defendant has lied about the reasons for his acts -- that he had a "dishonest belief" in the reasons -- can be strong evidence that a defendant has acted with discriminatory intent. See Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2108 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent

---

[5]Defendants do not make separate arguments that serve to distinguish between themselves -- for instance, about Fanboy's knowledge of Davis's knowledge and acts -- on appeal. Defendants treat themselves as one-and-the-same for purposes of this appeal. So do we.

with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"); St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination . . . .").

A plaintiff trying to show pretext based on a defendant's dishonest belief of the grounds the defendant gave for his decision does not succeed by presenting evidence that the defendant was mistaken about the facts upon which he based his alleged non-discriminatory decision. Instead, a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision. Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002); Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1260 (11th Cir. 2001). Thus, in this case, Plaintiff must have presented evidence from which a reasonable jury could have found that Defendant Davis did not honestly believe that Plaintiff's apartment was filthy and that Plaintiff and Plaintiff's children were responsible for the trash outside Plaintiff's

8

apartment.  One way to prove dishonest belief was for Plaintiff to present evidence that "no reasonable person, in the exercise of impartial judgment, could have" believed that Plaintiff and her children kept  both the inside and the outside of the apartment filthy.  See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1340 (11th Cir. 2000) (quoting Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)).[6]

The evidence at trial was capable of refuting Davis's claims that he thought that Plaintiff's apartment was "filthy."  So many witnesses testified that the interior of Plaintiff's apartment was always clean at the varying times that those witnesses visited the apartment that we must conclude that some reasonable jury could have found that Defendant Davis could not have honestly believed that Plaintiff's apartment was filthy.[7]  Sufficient evidence supported a jury's finding that

---

[6]When, in the employment context, an employer asserts that a hired or promoted employee was better qualified than the person alleging discrimination, we have described the kind of evidence needed to prove the pretext of the non-discriminatory reason: "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Alexander, 207 F.3d at 1340.  We apply a similar standard here.  And, as in the employment context, we note that "[t]his evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence.  Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact." Id.

[7]Eight witnesses, besides Plaintiff, testified that Plaintiff's apartment was clean.  Only Defendant Davis's testimony was to the contrary.  Walter Peek, the property manager before Defendant Davis took over, testified that Plaintiff's apartment was "tastefully decorated" and "always clean."  Dwight Reeves, Plaintiff's former boyfriend, testified that he was at Plaintiff's apartment every day, or every other day, and that Plaintiff kept the apartment clean.   Five other witnesses also testified that

9

Defendant Davis's first asserted non-discriminatory reason for evicting Plaintiff was a pretext and that Davis was untruthful.

We believe a reasonable jury could find that Defendant Davis's second asserted non-discriminatory reason -- that Plaintiff and her children were responsible for the trash outside Plaintiff's apartment -- was also a pretext. That trash accumulated outside Plaintiff's apartment seems undisputed.[8] But, several witnesses testified that Plaintiff and her children were not the cause of the outdoor trash problem, and the witnesses identified other obvious sources of the trash

---

Plaintiff's apartment was clean, some of whom visited "quite often" or "pretty much every day." And, Robert Crawford, a neighbor whose children played at Plaintiff's apartment, testified that he became alarmed when he learned from Davis that Davis was evicting Plaintiff because her apartment was "nasty". Crawford testified that he thereafter found an excuse to see the inside of Plaintiff's apartment and discovered that it "wasn't nasty"; it was clean.

The strength of evidence does not necessarily depend upon the number of witnesses who testify; but the number is a legitimate consideration among other things, such as whether the single witness in opposition is an interested party.

[8]Both sides agree that trash accumulated to some degree around the apartment. But Plaintiff did dispute Defendants' claim that Plaintiff had 12-15 bags of trash sitting on her back porch. We therefore must assume that the 12-15 bags did not exist.

problem.[9]  Plaintiff also testified that she told Davis that her children were not the cause of the trash.

When combined with evidence of Defendant Davis's untruthfulness about the state of the interior of Plaintiff's apartment, we think the testimony about the other obvious sources of trash accumulations outside Plaintiff's apartment would allow a reasonable jury to conclude that Davis did not honestly believe that Plaintiff and her children were responsible for the trash problems outside Plaintiff's apartment.  We stress that this asserted non-discriminatory reason -- that the area outside Plaintiff's apartment was filthy -- is closely related to Davis's other proffered reason: that the interior of the apartment was filthy.[10]  Thus, that strong evidence was presented to show that Davis's other non-discriminatory reason was pretextual  --  eight witnesses besides Plaintiff testified about the cleanliness of the interior of Plaintiff's apartment whenever they visited -- makes

---

[9]For instance, Walter Peek, the former property manager, testified that a convenience store was nearby and that people used the area around Plaintiff's apartment as a shortcut to go back and forth to that store and purchase snacks and so on.  And, Plaintiff testified about a particular time that Defendant Davis wanted Plaintiff's children to come out and pick up trash.  When Plaintiff looked at the trash, she realized it was Vienna sausage cans and beer bottles and tops left by Davis's own workers.  Also, Defendant Davis himself testified that drug dealers often hung out near Plaintiff's apartment.

Again, Defendant Davis was alone in testifying contrary to Plaintiff's version of events: Plaintiff's version being that Plaintiff and her children were obviously not responsible for the trash outside the apartment.

[10]In fact, Defendants often bundle the two reasons together.

this closely "intertwined" reason "fishy and suspicious" as well.  Wolf v. Buss (America) Inc., 77 F.3d 914, 920 (7th Cir. 1996).

We conclude, therefore, that sufficient evidence exists to support a finding that Defendant did not honestly believe the reasons he gave for the eviction.  But such a conclusion does not necessarily mean that sufficient evidence supported a finding of familial-status discrimination.  See Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (en banc) ("If the plaintiff does proffer sufficient evidence that the defendant's stated reasons are pretextual, the plaintiff still may not be entitled to take his case to a jury.").

The ultimate question in cases like this one-- whether a plaintiff has been unlawfully discriminated against -- can be resolved only in the light of the specific facts of each case.  See Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1291 (D.C. Cir. 1998) ("[T]he plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case.").   We readily recognize that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, [a defendant] would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the . . . decision, or

12

if the plaintiff created only a weak issue of fact as to whether the [defendant's] reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 120 S. Ct. at 2109. But, this case is not one of those instances.

Aside from the pretextual reasons discussed above, Defendants point to nothing else in the record that they contend shows a reason for the eviction other than familial-status discrimination. Compare Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1333-37 (8th Cir. 1996) (concluding that defendant was due summary judgment because evidence that established that proffered reasons were pretextual also clearly evidenced that plaintiff was fired for reasons other than age discrimination). And aside from Defendant Davis's testimony about his own motivation (testimony that seems not to have been believed by the jury), no other evidence seems to help Defendants. For example, Defendants do not evidence that they allowed tenants with children to remain in other apartments owned by Defendants in this complex[11], see Aka, 156 F.3d at 1291 ("Where an employer has a strong record of equal opportunity employment, any inference of discrimination arising from the discrediting of the employer's explanation may be a weak one, and

---

[11]Evidence showed that other families with children lived in the apartment complex. But, no evidence was presented to show that these families with children lived in the units owned by Defendants.

13

in some cases not strong enough to let a reasonable factfinder conclude that discrimination has occurred at all."), or that Defendants had leased the apartment to Plaintiff in the knowledge that she had children living with her.[12]  See Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

Taking the evidence in the light most favorable to Plaintiff, we are left only with (1) Plaintiff's prima facie case, (2) all of Defendant Davis's asserted reasons for the eviction were false and not honestly believed by Davis, and (3) Davis's hostility to Plaintiff's children.  With Defendants advancing no other explanation,[13] with the evidence of Davis's general hostility to Plaintiff's children, and with basically no evidence favorable to Defendant, we must conclude that Plaintiff has

---

[12]As discussed above, Plaintiff signed her lease before Defendants purchased the apartment units.

[13]Defendants never argue that we can infer no familial-status discriminatory intent from their giving of pretextual reasons because those pretextual reasons were given only to cover Davis's quid pro quo gender discrimination, and not familial-status discrimination.  Cf. Fisher v. Vassar College, 114 F.3d 1332, 1338 (2d Cir. 1997) (en banc) ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent.  And if, on examination of the circumstances, there are many possible reasons for the false explanation, stated or unstated, and illegal discrimination is no more likely a reason than others, then the pretext gives minimal support to plaintiff's claim of discrimination.").

14

presented sufficient evidence to support a jury's finding of familial-status discrimination.

Sufficient evidence supported both theories of recovery presented by Plaintiff to the jury. We therefore REVERSE the district court's order granting Defendants judgment as a matter of law on Plaintiff's familial-status discrimination claim and VACATE the district court's grant of a new trial to Defendants.[14]

REVERSED, VACATED and REMANDED.

---

[14]The grant of a new trial is reviewed for an abuse of discretion. See Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001). In this case, we reverse the district court's grant of a new trial because the basis of that decision -- that Plaintiff's familial status claim failed as a matter of law -- was an erroneous legal conclusion. Legal error is an abuse of discretion. See Freeman v. Case Corp., 118 F.3d 1011, 1014 (4th Cir.1997) (recognizing that the grant of a new trial based upon an error of law constitutes an abuse of discretion); Marco v. Accent Publishing Co., 969 F.2d 1547, 1548 (3rd Cir. 1992) (stating that, in preliminary injunction context, a district court abuses its discretion where the decision rests upon a "misapplication of law to the facts"); see also Sikes v. Teleline, Inc., 281 F.3d 1350, 1359 (11th Cir. 2002) (recognizing that, in class certification context, for a district court to apply the wrong legal standard is an abuse of discretion).