[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14265

Non-Argument Calendar

_____

ROBERTINO JONES,
an individual,
STEPHANIE JEUNE,
an individual,

Plaintiffs-Appellants,

versus

UNITY BEHAVIORAL HEALTH, LLC,
a Florida Limited Liability Corporation,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cv-81341-RLR

———————————

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Robertino Jones and Stephanie Jeune appeal following the entry of final judgment in favor of their former employer, Unity Behavioral Health, LLC, on their claims of employment discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3(a). The district court dismissed Jones's retaliation claim and Jeune's claims for retaliation and race and national-origin discrimination for failure to state a claim. It then granted summary judgment on Jones's remaining claim for race discrimination. After careful review, we affirm the district court.

**I.**

Jones, a Black male, and Jeune, a Black female of Haitian origin, jointly brought this counseled employment-discrimination action against Unity under Title VII arising out of their terminations on February 19, 2018.

According to the operative amended complaint, Jones worked for Unity as Director of Client Services, and Jeune worked under Jones as a Client Service Specialist. Jones alleged that, as one

of just two Black employees at the director level, he was treated worse and disciplined more harshly than similarly situated white employees, and that Unity retaliated against him for complaining of this and other race discrimination and advocating for pay raises for himself and Jeune.  Jones described being excluded from or disrespected at director meetings, subjected to racist and disparaging comments by a white director, and terminated without warning.  Likewise, Jeune alleged that she was treated differently and disciplined more harshly than similarly situated employees who were not Black or of Haitian origin, and that she was retaliated against based on reasons similar to those Jones specified.

Unity filed a motion to dismiss for failure to state a claim, which a magistrate judge recommended granting except as to Jones's claim of race discrimination.  For the retaliation claims, the magistrate judge found that the amended complaint failed to suggest that the plaintiffs engaged in protected activity or that their termination was causally related to the alleged protected activity.  For Jeune's discrimination claims based on race and national origin, the magistrate judge determined that the amended complaint offered nothing more than conclusory statements to show that she was treated less favorably than similarly situated employees who were not Black or of Haitian origin.

Over the plaintiffs' objections, the district court adopted the magistrate judge's recommendations, denied leave to amend, and dismissed the amended complaint with prejudice except for Jones's claim of race discrimination.  Then, after a period of discovery,

Unity moved for summary judgment on the remaining claim, supporting its motion with a statement of material facts and various evidentiary materials.  Jones responded in opposition and submitted a statement of disputed material facts with supporting evidence, including affidavits from Jones, Jeune, and another employee.

Because Jones's statement of disputed facts contained no pinpoint record citations, among other problems, the district court determined that it was deficient under Southern District of Florida Local Rule 56.1 and therefore deemed admitted the facts set forth in Unity's statement of material facts.  The court then granted summary judgment to Unity.  It reasoned that Jones failed to properly raise a mixed-motive theory of discrimination and that his claim failed under a single-motive theory because he didn't identify proper comparators for a *prima facie* case or show that Unity's legitimate, nondiscriminatory reason for his termination—that it had received multiple complaints from employees about Jones's rude, abrasive, and disrespectful conduct—was pretextual.  For similar reasons, the court also found that he had not presented a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination.

Jones appeals the grant of summary judgment on his race-discrimination claim and the dismissal of his retaliation claim. Jeune appeals the dismissal of her claims for retaliation and race and national-origin discrimination.

## II.

We begin with the dismissal of the plaintiffs' claims for failure to state a claim. We review that dismissal *de novo*, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiffs. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1299 (11th Cir. 2021). "Dismissal is warranted under Rule 12(b)(6) if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1299–30 (quotation marks omitted). For a claim to have facial plausibility, the facts alleged must "permit a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1300 (quotation marks omitted). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## A.

First, the retaliation claims: Title VII prohibits an employer from retaliating against an employee because the employee "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To state a retaliation claim, the plaintiff must establish that he or she engaged in protected activity and suffered an adverse employment action, and "that the adverse employment action was causally related to the protected activity." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). The relatedness between the protected activity and adverse action generally may

6                    Opinion of the Court                  20-14265

be demonstrated by close temporal proximity between them. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal proximity, without more, must be very close." *Id.* (quotation marks omitted).

Here, the district court didn't err by dismissing the retaliation claims. As an initial matter, we note that Jones abandoned his challenge on appeal because the plaintiffs' initial brief fails to address the district court's conclusion that the amended complaint lacked sufficient factual allegations to suggest that his termination was causally related to his alleged protected activity. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.") His arguments in the reply brief "come too late." *Id.* at 682–83.

But in any case, we agree with the district court's assessment of the sufficiency of the amended complaint. The plaintiffs assert on appeal that they were retaliated against for advocating for pay raises. The amended complaint, however, fails to allege that their advocacy included a claim that they were denied a pay raise on account of a protected ground. That the plaintiffs were underpaid, standing alone, isn't a matter within the scope of Title VII. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (stating that Title VII "simply prohibits the employer from discriminating on the basis of membership in a protected

20-14265            Opinion of the Court                  7

class"). So the plaintiffs' opposition to their alleged underpayment, without a connection to discrimination, isn't protected activity under Title VII. *See* 42 U.S.C. § 2000e-3(a).

Nor does the amended complaint offers details to show when the alleged protected activity occurred in relation to the plaintiffs' termination, so it doesn't permit an inference of causation based on temporal proximity. *See Thomas*, 506 F.3d at 1364. Jeune responds that a causal connection was shown because she was terminated "not too long" after her complaint reached the desk of Jason Ackner, Unity's owner and Chief Executive Officer. But these facts were not alleged in the amended complaint, nor can they reasonably be inferred, and we must "limit[] our review to the four corners of the complaint" in reviewing decisions on a motion to dismiss. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Insofar as Jeune believes she should have been permitted leave to amend to incorporate facts learned during discovery on Jones's discrimination claim, she didn't clearly raise that issue below and she has abandoned any challenge to the court's denial of leave to amend by failing to address that decision on appeal. *See Sapuppo*, 739 F.3d at 681.

## B.

Next, we consider Jeune's race and national-origin discrimination claims together because she relies on the same evidence and arguments for both claims. These claims were based on the following factual allegations: (a) Unity failed to pay her fairly for her job responsibilities despite promising to do so; (b) the Clinical

Director, Theresa Zechman, used offensive and derogatory language when speaking to Black employees, and Unity "did nothing" to stop her despite complaints by Jeune and other Black employees; and (c) Unity never counseled or warned Jeune about her performance or conduct before terminating her.

Title VII prohibits employers from making employment decisions based on race or national origin, among other protected grounds. *See* 42 U.S.C. § 2000e-2(a)(1). To state a claim of race discrimination under this provision, "a complaint need only provide enough factual matter (taken as true) to suggest intentional race [or national origin] discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks omitted). "The complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Id.* (quotation marks omitted).

Here, the district court properly dismissed Jeune's discrimination claims. Nothing in the amended complaint indicates that Jeune's alleged underpayment was connected to her race or national origin. For instance, she doesn't identify a comparator outside her protected classes who performed similar responsibilities but was paid more than she was. Nor does she identify a comparator for her assertion that Unity failed to counsel or warn her before termination. And her allegations otherwise fail to suggest that Unity violated its own policies in firing her without first warning her. Jeune's stated belief that her race or national origin motivated these decisions is conclusory and unsupported by the factual

allegations in the amended complaint. *See Oxford Asset Mgmt.*, 297 F.3d at 1188.

Finally, Jeune's allegations concerning Zechman are deeply troubling. But because of pleading deficiencies, they are insufficient to state a claim of discrimination. Jeune alleged that Zechman, the Clinical Director, used disparaging and racist language when interacting with Black employees. In particular, according to the amended complaint, Zechman would respond to questions of Black employees by uttering "Otay," a reference to the character "Buckwheat," the only Black character featured in the "Little Rascals," "whose garbled English was punctuated by his signature explanation, 'Otay.'" If these allegations are true, any such conduct was, to say the least, strongly offensive and inappropriate.

But on this record, they are not enough to save Jeune's case because the amended complaint fails to indicate that Zechman had any supervisory authority over Jeune or was otherwise involved in the termination or pay-raise decisions.[1] As a result, we cannot reasonably infer that these decisions were motivated by Zechman's alleged bias.[2] *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th

---

[1] The amended complaint alleges "[u]pon information and belief" that Zechman was "instrumental in Defendant's decision to terminate" the plaintiffs. Because that conclusory assertion is not backed up by any factual allegations, we don't accept it as true in reviewing the dismissal of these claims. *See Oxford Asset Mgmt.*, 297 F.3d at 1188.

[2] In the reply brief, Jeune argues that Zechman's conduct created a hostile work environment. But no such claim was raised in the amended complaint or in response to the motion to dismiss. And we don't consider arguments or

Cir. 1999) ("[C]omments by non-decisionmakers do not raise an inference of discrimination.").

For these reasons, we affirm the district court's order granting Unity's motion to dismiss the retaliation claims and Jeune's claims of race and national-origin discrimination.

## III.

Finally, Jones contends that the district court erred in granting summary judgment to Unity on his claim of race discrimination. We review the district court's summary-judgment ruling *de novo*, construing the evidence and drawing all reasonable inferences in favor of Jones, the nonmoving party. *Tolar*, 997 F.3d at 1288–89. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists if a reasonable jury could return a verdict for the nonmoving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## A.

When a claim is based on circumstantial evidence, as it is here, we ordinarily apply the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th

---

claims raised for the first time in a reply brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014).

Cir. 2005). Under that framework, the plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the employer does so, "the inference of discrimination drops out of the case entirely," and the plaintiff then has the opportunity to show that the employer's proffered reasons were pretextual. *Id.* at 768. To show that an employer's reason isn't credible, the employee must meet that reason head on and rebut it; he may not merely quarrel with the wisdom of that reason. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez*, 610 F.3d at 1265.

Alternatively, a plaintiff may defeat a summary-judgment motion outside the *McDonnell Douglas* framework by presenting "a convincing mosaic" of circumstantial evidence that raises a reasonable inference that the employer discriminated against him. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The "crux of the analysis" at summary judgment is simply "whether the plaintiff has offered sufficient evidence to establish a genuine issue of discrimination." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016).

When a plaintiff seeks to prove discrimination with evidence that a similarly situated employee outside his protected class was treated more favorably than he was, he must show that the

comparator is "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1226–27 (11th Cir. 2019) (*en banc*). A valid comparator ordinarily is someone who engaged in the same basic conduct as the plaintiff, who was subject to the same employment policies and decisionmaker, and who "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

### B.

Before discussing the merits of Jones's claims, we pause to note that Jones has failed to address in his initial brief, and therefore has abandoned any challenge to, the district court's decision to deem admitted Unity's statement of material facts based on his failure to respond in compliance with Southern District of Florida Local Rule 56.1. Jones's statement of material facts was noncompliant under that rule because, among other things, it failed to support each fact "by specific, pinpoint references to particular parts of record material." S.D. Fla. Local Rule 56.1(b)(1)(B). Because Jones failed to properly controvert Unity's statement of material facts, the court was authorized to "deem[] admitted" those facts. S.D. Fla. Local Rule 56.1(c).

Nevertheless, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The court may "disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that

yields facts contrary to those listed in the movant's statement." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). But the court at least "must review all the evidentiary materials submitted in support of the motion for summary judgment." *One Piece of Real Prop.*, 363 F.3d at 1101–02.

In reviewing the district court's grant of summary judgment, therefore, "[w]e confine our review of the record in this case to the materials submitted by [Unity] in support of its summary judgment motion." *Id.* at 1102 n.4. In other words, we don't consider the affidavits from Jones, Jeune, and another employee that were submitted by the plaintiffs.

## C.

Here, the district court properly granted summary judgment to Unity on Jones's claim of race discrimination based on the materials it submitted with its motion. *See id.* at 1101–02 & n.4. Although the court determined that Jones failed to establish a *prima facie* case, we need not resolve that issue. Instead, we turn directly to the question of whether he created a triable issue of discriminatory intent, either by establishing pretext in Unity's explanation or by presenting a "convincing mosaic" of circumstantial evidence.

*1. Unity's Legitimate, Non-Discriminatory Reason for Jones's Termination*

Unity maintains that it fired Jones after it received multiple complaints from his coworkers and subordinates about his rude,

abrasive, and disrespectful conduct.  Its evidence showed the following.

Unity hired Jones as Director of Client Services on December 5, 2016.  In that role, he was responsible for developing and managing systems to ensure care coordination, and for providing leadership, oversight, training, and management for Unity's behavioral health technicians and client-services staff.  His first several months on the job were incident-free.

But Unity began to receive complaints about Jones beginning in mid-to-late 2017.  On August 24, 2017, Steven Tillman, who worked under Jones, lodged a formal complaint against Jones and Cara Payson, a manager subordinate to Jones.  According to Tillman, Jones and Payson had created a "hostile work environment," with staff regularly being ridiculed and threatened with termination, and Jones had warned his staff not to go to HR.  Tillman requested a demotion so he would no longer have to work with them.  The next day, Unity received a similar complaint from Trinette Gaskins, who also worked under Jones and Payson.  Gaskins described the work environment as "extremely hostile" because of the "terrible behavior" of both Jones and Payson, which involved talking disrespectfully to staff and "being unprofessional."  Gaskins wrote that she and other members of the behavioral-health department "cannot work like this for much longer."

Then, in October 2017, according to Joe Monastra, Unity's Chief Operations Officer and Jones's direct supervisor, the company received complaints from Zechman and behavioral-health

technician staff that Jones was continuing to engage in abrasive interactions when dealing with staff. Monastra also "personally witnessed inappropriate/unprofessional behavior during the daily operations meetings," such as eyerolling or text messaging when other employees were presenting.

The decision to terminate Jones was made in February 2018, after several employees complained about him directly to CEO Ackner, raising similar issues as the prior complainants. These employees included Christopher Coleman, who worked under Jones; Ron Filocomo, a part-time Fleet Manager; and Ana LoPinto, Unity's Controller. On February 18, 2018, Ackner met with Monastra to discuss the complaints, and Monastra told Ackner he had verbally counseled Jones on several prior occasions in response to prior complaints regarding his behavior. Ackner made the decision to terminate Jones's employment, and Jones was notified the next day. Jones's termination paperwork reflects that he was terminated because of a "[p]attern of consistent verbal inappropriateness when managing staff." He was given two weeks of severance pay. The next two individuals to fill Jones's position were Black.

## 2. *Jones's Arguments to Establish Pretext or Discrimination*

In arguing that a reasonable jury could infer discriminatory intent behind Unity's decision to terminate his employment, Jones makes three main arguments. We address each in turn.

First, Jones asserts that he was subject to more severe sanctions than similarly situated white employees who engaged in

similar misconduct.  He identifies three such employees on appeal: Filicomo, Payson, and Zechman.

But we decline to consider Payson as a comparator because Jones never made that argument to the district court, instead focusing on Filicomo and Zechman.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotation marks omitted)).

As to Filicomo, the evidence fails to show he engaged in the same basic conduct as Jones or had a similar history.  *See Lewis*, 918 F.3d at 1227–28.  The record reflects that Jones was terminated following a series of complaints about his supervision and management of employees, a substantial component of his job, whereas Filicomo was the subject of a single complaint from an employee whom Filicomo didn't supervise.  These material differences prevent any meaningful comparison.  *See id.*

We also cannot conclude on this record that Zechman is a proper comparator.  The district court found that Unity was never made aware of any misconduct or discrimination issues regarding Zechman from June 2017 until after Jones was terminated.  It's true that the evidence fails to show any written complaints about Zechman during that time period.  But in Jones's deposition, which Unity submitted with its summary-judgment motion, Jones testified that he complained repeatedly to COO Monastra and HR Director Maggie Adams about Zechman's racist use of "Otay" when

20-14265          Opinion of the Court          17

speaking with Black employees and her otherwise rude and abrasive conduct when interacting with Black employees. The court erred by failing to credit this testimony, even if not properly designated by Jones in his statement of material facts. *See One Piece of Real Prop.*, 363 F.3d at 1101–02 & n.4. And that evidence suggests that Zechman was subject to broadly similar complaints of misconduct as Jones.

Nevertheless, the evidence reflects a crucial and, in our view, dispositive difference between the two situations. Jones was terminated after several employees complained *directly* to CEO Ackner, who Jones admits "solely decided to fire [him]." But Jones had no knowledge of, and nothing in the record indicates, whether Ackner was also made aware of the complaints against Zechman.[3] Because there is no evidence that the sole decisionmaker, CEO Ackner, was aware of the complaints against Zechman, no reasonable jury could infer that the difference in treatment between Jones and Zechman was the result of intentional discrimination. *See Lewis*, 918 F.3d at 1227–28; *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."); *Jones v. Gerwens*, 874 F.2d 1534, 1541–42 (11th Cir. 1989) (rejecting a comparison to other rule violators where

---

[3] Notably, it appears that Jones didn't depose, or at least didn't offer the depositions of, members of Unity management, including CEO Ackner, COO Monastra, HR Director Adams, or Clinical Director Zechman.

there was no evidence showing that the decisionmakers "knew of such practices and did not act to discipline rule violators").

Second, Jones maintains that Unity failed to follow its own disciplinary policies by terminating him without any prior counseling or warnings. *See, e.g.*, *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir.1985) ("Departures from normal procedures may be suggestive of discrimination."). But he fails to identify any particular policy in the Employee Handbook that Unity did not follow. And undisputed evidence reflects that COO Monastra informed CEO Ackner in February 2018 that Jones had in fact been counseled on several prior occasions. While Jones testified that no such counseling occurred, and we credit that for purposes of our review, no evidence suggests that Ackner "did not honestly believe the facts upon which he allegedly based his non-discriminatory decision." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002). That Ackner may have been mistaken about the underlying facts is not enough to show discriminatory intent. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race.").

Finally, Jones points to issues regarding his pay and severance. He suggests that he was denied a pay raise because of his race, but the evidence shows he received the raise he requested when two members of upper management voluntarily donated part of their salary to him. And his questioning of the reasons

behind granting him two weeks of severance pay fails to rebut Unity's stated reasons for his termination. *See Chapman*, 229 F.3d at 1030.

In sum, we agree with the district court that no reasonable jury could conclude that Unity's proffered reason for Jones's termination was pretextual or that Unity intentionally discriminated against him based on his race. We therefore affirm the grant of summary judgment in favor of Unity.

**AFFIRMED.**