[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-14141

Non-Argument Calendar

_____

SYLVIA A. FRIPP,

Plaintiff-Appellant,

*versus*

CITY OF ATLANTA, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-02670-CAP

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Sylvia Fripp appeals the district court's grant of summary judgment in favor of the City of Atlanta on her claim of retaliation in violation of Title VII.  *See* 42 U.S.C. § 2000e-3(a).  After careful review, we affirm.

**I.**

The relevant facts are set forth in detail in the magistrate judge's report and recommendation, so we provide only a short summary here.  In May 2015, Fripp transferred to the job of Equipment Operator II in the City's Department of Transportation, under the supervision of Allen Smith.  After short training stints in other sections, including concrete and asphalt, Fripp moved to the North Avenue "bridge shop" in March 2016.

In November 2017, Fripp complained to Smith that a coworker had sexually harassed her.  Smith testified that he conducted an investigation but was unable to substantiate her claims.  Thereafter, Smith transferred Fripp to the so-called "administration building" with the facilities team.  In April 2018, Fripp filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on these events.

For periods of 2018 and 2019, Fripp was placed on sedentary work restrictions by physicians due to work-related injuries.  Smith informed human resources he was unable to accommodate those

restrictions, so Fripp was placed on workers' compensation leave during those times.

In October 2019, Fripp's workers' compensation doctor, Michael York, M.D., released her to return to work on regular duty without any limitations on November 1, 2019. When Fripp eventually returned to work on December 3, 2019, though, she was wearing a leg brace and using a cane. That prompted discussions between Smith, human resources, and workers' compensation on next steps.

Not long after, Smith and human resources scheduled Fripp for a fitness-for-duty examination. That exam, originally scheduled for January 13, 2020, was postponed pending the outcome of Fripp's visit with Dr. York, her workers' compensation doctor, on January 8. Based on the exam, Dr. York opined that Fripp remained at maximum medical improvement for her workers' compensation injury—though he recommended knee surgery for a non-work-related injury—and that she could return to work without restrictions on January 9, 2020. Dr. York also included, and then later rescinded, a light-duty restriction based on a "functional capacity evaluation" that Fripp's attorney had ordered.[1]

The City then rescheduled Fripp's fitness-for-duty exam for February 6, 2020, and it notified Fripp that she was required to

_____

[1] As the magistrate judge noted, while the functional capacity evaluation itself states that it was prepared at Dr. York's request, other evidence established that "Dr. York in fact did not order it." Fripp does not dispute that finding on appeal.

attend.  It also provided her with disability-accommodation paperwork.  Fripp did not attend the fitness-for-duty exam or return any completed disability paperwork.

Meanwhile, on January 2, 2020, Plaintiff filed an internal grievance with the City, alleging that a coworker had sexually harassed her.  Smith notified human resources, which forwarded the grievance to the City's Office of Labor and Employee Relations ("OLER").

On March 25, 2020, Smith sent to human resources a draft Notice of Proposed Adverse Action, in which he recommended Fripp's dismissal for failure to attend the fitness-for-duty exam.  But the termination did not proceed at that point because the new Director of OLER, Michael Kirkwood, discovered that Fripp's January 2020 sexual harassment complaint was still pending and needed to be resolved before the City could proceed with Fripp's dismissal.  Kirkwood ultimately determined that her allegations were unsubstantiated and closed the investigation.  Soon after, Fripp filed a charge of discrimination with the EEOC, alleging sex discrimination and retaliation.

Beginning on December 29, 2020, Fripp did not work.[2]  On January 29, 2021, the City emailed Fripp paperwork so that she could request leave under the Family and Medical Leave Act ("FMLA").  A few days later, human resources initiated the process to terminate Fripp's employment, noting in an email that "[w]e

---

[2] Fripp was sick with COVID for part of January 2021.

have been dealing with her for some time." When contacted by Smith about her absence, Fripp said she wanted to use her accrued leave hours and submitted a doctor's note stating that she should be placed on medical leave from January 14, 2021, through July 1, 2021. But she did not complete any FMLA paperwork, as directed.

On April 8, 2021, Smith sent Fripp a Notice of Proposed Adverse Action, advising that her employment would terminate in two weeks. The notice stated that the department sought dismissal, in part, for "insubordinat[ion]," in violation of City Code § 114-528(b)(3) and (b)(16), for refusing to return to work or to attend the fitness-for-duty assessment as ordered on February 6, 2020, after she had been released to return to work without restrictions by her workers' compensation doctor. The notice also asserted that Fripp had been absent without leave, in violation of City Code § 114-528(b)(8), due to her failure to request a reasonable accommodation or to return "any FMLA documents to support her inability to report to work." A Notice of Final Adverse Action, reciting the same basic grounds, was issued on April 27, 2021.

## II.

Fripp sued the City in federal court in July 2021, asserting claims under Title VII, the Equal Protection Clause of the Fourteenth Amendment, and the Fair Labor Standards Act ("FLSA"), and for violations of her right to privacy. Following litigation and multiple amendments, Fripp filed a third amended complaint raising just two claims: (1) retaliation in violation of Title VII; and (2)

violation of the FLSA.  Only the Title VII retaliation claim is at issue in this appeal.

After discovery, a magistrate judge issued a report and recommendation ("R&R") recommending that the City's motion for summary judgment be granted.  In relevant part, the magistrate judge concluded that Fripp had not presented any direct evidence of retaliation and that her circumstantial evidence was insufficient to present a jury question.  The magistrate judge explained that Fripp based her retaliation claim on three alleged adverse actions: (1) refusal to allow her to perform light-duty work; (2) interference with her workers' compensation claim; and (3) termination.  In the magistrate judge's view, no evidence supported Fripp's claims that the City refused light-duty work or interfered with her workers' compensation claim.  As for her termination, the magistrate judge concluded that Fripp failed to establish a causal connection between her protected activity and her termination or to show that the City's legitimate, non-retaliatory reasons for her termination were pretextual.

Fripp filed objections to the R&R's legal conclusions but did not clearly object to the magistrate judge's construction of the relevant facts.  The district court overruled Fripp's objections, adopted the magistrate judge's R&R, and granted the City's motion for summary judgment.  This appeal followed.

## III.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Fripp

and drawing all reasonable inferences in her favor. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1288–89 (11th Cir. 2021). Summary judgment is appropriate if the evidence, construed in this way, shows that there are no genuine issues of material fact and that the City is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). "A genuine factual dispute exists if the jury could return a verdict for the non-moving party." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a).

We often rely on a burden-shifting framework to evaluate retaliation claims based on circumstantial evidence, like the claim asserted by Fripp, at summary judgment. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337 (11th Cir. 2023). The "plaintiff must first make out a prima facie case by showing (1) she engaged in a statutorily protected activity, (2) she experienced an adverse employment action, and (3) causation." *Id.* The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. *Id.* If the employer does so, "the plaintiff must show that each reason is merely a pretext and that the real reason was retaliation." *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022).

In showing pretext, the plaintiff generally "must meet [the] reason head on and rebut it, and the employee cannot succeed by

simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). Our inquiry, ultimately, "is limited to whether the employer gave an honest explanation of its behavior." *Id.*; *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). A plaintiff's showing that the employer was simply incorrect in its decision is insufficient. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, "a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based [the] non-discriminatory decision." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002).

## A.

Before we get to that analysis, though, we must address Fripp's claim that she has direct evidence of retaliation not subject to this burden-shifting framework. "Direct evidence is evidence, that, if believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (cleaned up). Circumstantial evidence, in contrast, "only suggests, but does not prove, a discriminatory motive." *Id.* at 921–22 (quotation marks omitted). Under our precedent, direct evidence includes "only the most blatant remarks, whose intent could mean nothing other than to discriminate" or retaliate. *Jones v. Gulf Coast Health Care of Delaware*, LLC, 854 F.3d 1261, 1270 (11th Cir. 2017) (quotation marks omitted).

23-14141                Opinion of the Court                9

Fripp offers three statements which, in her view, qualify as direct evidence of retaliatory intent. We disagree.

Fripp first points to Smith's January 25, 2018, email to human resources, in which he wrote that he was "unable to accommodate Ms. Fripp in a working capacity at North Ave.," after noting that she had complained of sexual harassment or bullying in multiple sections, including concrete, asphalt, and the bridge shop. She also cites a similar email from Smith to human resources on August 8, 2019, in which he asked to reassign Fripp, stating, "I am no longer able to accommodate her at North Ave. Ms. Fripp has claimed that she has been harassed at multiple sections at North Ave."

Although these emails clearly evince a causal connection between her complaints and her reassignment, they do not prove a retaliatory motive "without inference or presumption."[3] *See Jefferson*, 891 F.3d at 921. A reasonable factfinder could instead infer, as Smith testified, that he "wanted to place [Fripp] in a different environment, just to give her space from anything she may have been perceiving as harassment or an uncomfortable situation."

Finally, Fripp cites similar comments Smith made in the Notice of Proposed Adverse Action under the section entitled "Infraction." But again, those comments do not prove retaliatory motive without inference or presumption. The notice did not claim that

---

[3] Nor does Fripp cite her reassignment as an adverse action on which her retaliation claim is based.

Smith had committed any infraction in relation to her complaints. Nor did it directly cite those complaints as a basis for dismissal. Rather, the comments appear as backstory for the other infractions listed in the notice. And that is not enough to serve as direct evidence under our precedent. Accordingly, the district court properly found that Fripp did not present direct evidence of retaliatory intent.

**B.**

Turning to Fripp's circumstantial evidence, which we construe in the light most favorable to her, we agree with the district court that no reasonable jury could return a favorable verdict on her Title VII retaliation claim. Even assuming Fripp established a prima facie case of retaliation, she has not rebutted the City's legitimate, non-retaliatory reasons for its actions or otherwise presented sufficient evidence to support a reasonable inference that she suffered an adverse action in retaliation for her protected activity. *See Tolar*, 997 F.3d at 1288–89; *Thomas*, 506 F.3d at 1363.

In support of her retaliation claim, Fripp relies on three alleged adverse actions: (1) Smith's "refusal to assign her to light duty work"; (2) "the City's interference with her workers' compensation claim"; and (3) her termination. We address each action in turn.

1. Refusal to assign light-duty work

Fripp claims that Smith refused to accommodate her with light-duty work. The record shows that Fripp was twice placed on sedentary work restrictions due to work-related injuries, first in mid-2018, and then again in September 2019. On both occasions,

Smith informed human resources that he was unable to accommodate her restrictions because no sedentary work was available, so Fripp was placed on workers' compensation leave as a result.

Fripp has not established pretext. She offers no evidence to contradict Smith's explanation that no sedentary work was available to accommodate her restrictions. While she points out that Smith had transferred her to the administration building with the facilities team in January 2018, she cites no evidence that her work there would qualify as sedentary, even if it was primarily administrative, or that other sedentary work was available at the time her restrictions were in effect. She also asserts that other employees were permitted to work with a sling or a cane, but she identifies no details about their jobs or work restrictions. Nor does the record otherwise indicate a connection between her complaints of sexual harassment and the purported denial of light work, such as temporal proximity.

## 2. Interference with workers' compensation

Next, Fripp contends that the City interfered with her workers' compensation case by ordering a fitness-for-duty examination and seeking changes to her workers' compensation doctor's recommendations.

The record shows that Smith and human resources ordered the fitness-for-duty exam after Fripp returned to work on December 3, 2019, wearing a leg brace and using a cane, even though she had been cleared by Dr. York, her workers' compensation doctor, to return to full duty with no restrictions. Smith testified he was

concerned about whether Fripp could perform the work of her position as an equipment operator II.  The exam was postponed pending another visit with Dr. York on January 8.  After the visit, Dr. York opined that Fripp remained at maximum medical improvement and that she could return to work without restrictions on January 9, 2020.  But Dr. York noted that Plaintiff had knee problems that were not related to any workplace injury, and he recommended that she undergo left-knee replacement surgery through her private insurance.  Dr. York also noted that Plaintiff had brought in a "functional capacity evaluation" that her attorney had ordered.

Despite stating that Fripp could return without restrictions, Dr. York also opined, under the heading "Current Work Status," that Fripp "may return to light duty today based on the [functional capacity evaluation] recommendations."  Later that month, on January 28, 2020, Dr. York removed the "light duty" recommendation and clarified that Fripp could return to work "without restrictions." It appears Dr. York was asked to clarify Fripp's work status because, according to an email to the City from an employee with the City's third-party administrator for workers' compensation claims, "[h]e did not order the [functional capacity evaluation] therefore he should not be addressing the [functional capacity evaluation]."

Here, as a magistrate judge observed, Fripp offered no evidence that the City interfered with any workers' compensation benefit to which Fripp was entitled.  Nor do we see any evidence of pretext.  The fitness-for-duty examination was postponed until

after Dr. York completed his evaluation, after which he released Fripp to return to work "without restrictions." And while Dr. York initially included a light-duty recommendation, the record shows that this recommendation was based on a non-work-related injury, and a functional capacity evaluation he did not order, rather than the workers' compensation injury. That Dr. York was asked to limit his evaluation to the work-related injury does not suggest either pretext or retaliation.

### 3. Termination

Finally, Fripp maintains that the City terminated her in retaliation for her repeated complaints of sexual harassment. The City proffered two main reasons for her termination: (1) insubordination, for refusing to return to work or to attend the fitness-for-duty assessment as ordered, after she had been released to return to work without restrictions by her workers' compensation doctor; and (2) being absent without leave by failing to request a reasonable accommodation or to return "any FMLA documents to support her inability to report to work."

As to the first reason, Fripp primarily relies on City Code § 114-380, which states, "The head of the department, with the approval of the commissioner of human resources, shall have the right to direct any employee within such department to be examined by a physician or psychologist to be designated by the city." She asserts that Smith was not head of the department and did not obtain approval of the commissioner of human resources. Fripp has not raised a material issue of fact about pretext.

Undisputed evidence shows that the City had reasonable grounds to believe a fitness-for-duty exam was warranted, since Fripp appeared unable to perform her job functions despite being released to full duty by Dr. York, her workers' compensation doctor. The evidence also reflects that, before the City ordered the fitness-for-duty exam, Smith sought guidance and obtained approval from the human resources department, which issued the notice to Fripp about the exam. Even assuming this process did not follow the City code, we agree with the magistrate judge that Fripp came forward "with no evidence to suggest that Smith and human resources did not honestly believe they could require such an exam or discipline her for refusing one." *See Alvarez*, 610 F.3d at 1266 (explaining that "[t]he inquiry into pretext centers on the employer's beliefs"); *Woodard*, 298 F.3d at 1265 ("[A] plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-[retaliatory] decision.").

Nor are we persuaded that pretext is shown by evidence that the City attempted to schedule the fitness-for-duty exam while Fripp was seeing a workers' compensation doctor. Fripp's evidence indicates that a fitness-for-duty exam is not appropriate while an employee is actively under the care of a workers' compensation doctor, who is authorized to "dictate what they can and can't do." Smith likewise cast doubt on the need for a fitness-for-duty exam in these circumstances. But the record shows that the fitness-for-duty exam was first scheduled after Dr. York released Fripp to return to work on regular duty without any limitations on

November 1, 2019. It was then postponed when it became clear that Fripp had another appointment scheduled with Dr. York for January 8, 2020. But the person who requested the cancellation noted that the exam "can be rescheduled after we receive the notes" from that visit. And the exam was not rescheduled until Dr. York apparently offered his final thoughts on the matter in late January 2020. So we do not find Fripp's contention that there was something improper in the scheduling of the fitness-for-duty exam to be well taken.

As to the second reason cited for Fripp's termination—her absence from work without leave—Fripp likewise has not shown a material issue of fact concerning pretext. For starters, we reject Fripp's contention that this legitimate, non-retaliatory reason was not available to the City at the time it decided to move forward with her termination in February 2021. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) ("[A]n employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made."). By that time, Fripp had been absent from work since December 29, 2020. Although Fripp had COVID for part of that time, she does not cite evidence that her absence from work had been approved more generally. So while Smith later added her failure to return FMLA paperwork in the Notice of Proposed Adverse Action, that failure merely confirmed that her absence was unapproved.

As the magistrate judge explained, the City's Director of Human Resources testified that employees who anticipated being absent for extended periods must apply for leave under the FMLA to protect their jobs.  If a City employee does not apply for FMLA leave and is out of work for an extended period, then that leave is unapproved, even if the employee has sick leave or other leave available.  No other City official testified to the contrary.  While such a policy does not appear to have been codified, Fripp offers no evidence that City officials applied the policy inconsistently or did not honestly believe that Fripp was required to return FMLA paperwork to excuse her extended absence from work.

For these reasons, we agree with the magistrate judge and the district court that Fripp has not established pretext in the City's legitimate, non-retaliatory reasons for her termination, or in the other alleged adverse actions she raised.  We therefore affirm the district court's grant of summary judgment on Fripp's claims of retaliation under Title VII.

**AFFIRMED.**